1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRUCE ROBINSON, a natural person,

Plaintiff,

v.

PIERCE COUNTY, a county of
Washington State; LARRY GEZELIUS, a
natural person and the marital estate
thereof; DENNIS SCHATZ, a natural
person and the marital estate thereof,

Defendants.

CASE NO. C06-5354BHS

ORDER GRANTING
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary

Judgment (Dkt. 18) and the motion to strike contained in Defendants' reply (Dkt. 32).

The Court has considered the pleadings filed in support of and in opposition to the

motions and the remainder of the file and hereby grants the motions for the reasons stated

herein.

## I. FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed or presented in the

light most favorable to Plaintiff, the nonmoving party:

### A.    MR. ROBINSON'S WORK WITH PIERCE COUNTY

In 1996, Pierce County's ("the County") Budget & Finance Department ("Budget

& Finance") created a position to work on financial applications running on the County's

ORDER - 1

mainframe computer. Dkt. 21 at 1. The mainframe is a large computer housed in a building in downtown Tacoma, Washington. Dkt. 23 at 3.  Mr. Robinson was hired to fill that position in March of 1997. Dkt. 1 at 14; Dkt. 21 at 2. Mr. Robinson graduated from The Evergreen State College with a bachelor's degree in Public Administration and a minor in Computer Science in 1981. Mr. Robinson's work performance generally met the County's standards for several years. *See* Dkt. 29-2, Exh. A at 1-15 (performance evaluations for 1998-2002 ranking Mr. Robinson's performance as "meet[ing] standards").

Beginning in the year 2000, the County began to shift its focus away from the mainframe computer. Between 2000 and 2004, the Budget & Finance Department decided to improve and streamline several financial functions. Dkt. 21 at 2. To do so in an efficient and cost effective manner, Budget & Finance decided to utilize ColdFusion, Sybase, PowerBuilder, and JAVA development tools rather than enhancing or developing applications to run on the mainframe computer. Dkt. 21 at 2. The County also moved away from use of the mainframe because the mainframe is believed to be more difficult for users and does not provide the same advantages of other client server options such as PowerBuilder, ColdFusion, and Sybase. Dkt. 23 at 3.

As part of these efforts, Mr. Robinson converted the County's mainframe-based online development system to a client-based development workbench. Dkt. 29 at 2. From late 2002 to the Spring of 2004, Mr. Robinson worked exclusively on Budget & Finance's Purchase Order Payables/Accounts Payable project ("POPS/AP"), which involved enhancement or rewriting of an existing PowerBuilder/Sybase application. Dkt. 23 at 2. At the time, the IT (information technology) Department used these technologies extensively. Dkt. 23 at 2. Mr. Robinson was responsible for creating the interface between the mainframe and the revised application which required use of Sybase. *Id.* Other programmers were responsible for the PowerBuilder/Sybase rewrite. *Id.*

ORDER - 2

In 2004, the County determined that it no longer required a position to handle financial applications running on the mainframe computer because there were no plans to develop new mainframe-based applications. Dkt. 21 at 2. The ultimate result of the County changing focus from the mainframe computer was the decision to terminate the position held by Mr. Robinson. Dkt. 21 at 2.

**B.    ITS2 POSITIONS**

In 2004 and 2005, Budget & Finance began work on projects to improve and streamline County financial functions. Dkt. 21 at 2-3. To meet demands posed by these new projects, the County created five additional system developer positions, each of which required knowledge of PowerBuilder, Sybase, ColdFusion, and JAVA. Dkt. 21 at 3.

In March of 2004, Mr. Robinson began applying for several positions within his "ITS2" classification. *Id.* Mr. Robinson met privately with Mr. Gezelius and asked what he could do to become more valuable to the County. Dkt. 1 at 15. Mr. Gezelius told Mr. Robinson to seek JAVA training from Defendant Dennis Schatz, his immediate supervisor. Dkt. 1 at 15. Mr. Schatz approved the request but was unable to obtain funding. *Id.* On May 5, 2004, Mr. Gezelius asked Mr. Schatz to identify employees who might benefit from a week of Sybase training. Dkt. 23 at 3. Mr. Schatz recommended Mr. Robinson, and Mr. Robinson attended the training. Dkt. 23 at 3. Ultimately, Mr. Robinson was not hired for any of the IT positions for which he applied.

**C.    THE LAYOFF**

Defendant Larry Gezelius is the County's Software Development Manager. Dkt. 1 at 14; Dkt. 20 at 1. Mr. Robinson contends that Mr. Gezelius expressed a "disdain" for older technology and lacked respect for employees whose work he had not personally observed. Dkt. 1 at 14. Mr. Gezelius preferred newer workers with newer skill sets and began moving older employees into different areas, which required different skills, without providing any training or direction. *Id.* Mr. Robinson contends that such changes

were understood as a form of unofficial probation under which employees were given six months to "become productive." *Id.*

In July of 2004, after it was determined that Mr. Robinson's mainframe position would be terminated, the Human Resources department asked Mr. Gezelius to assess what skills were required to satisfy the County's clients and for an evaluation of each ITS2 employee with respect to those skills. Dkt. 20 at 3. Such a procedure appears to be typical for layoffs in the County. Dkt. 22 at 2.

Mr. Gezelius determined that 85% of the County's software development work required skills in ColdFusion, PowerBuilder, Sybase, and XML. Dkt. 20 at 3. Mr. Gezelius then asked his team leads to evaluate their ITS2 employees in these categories. The team leads were asked to rate each employee on a scale of zero to four, with four being the most competent. Dkt. 23 at 3.

Mr. Schatz was responsible for evaluating Mr. Robinson, and Mr. Gezelius relied on Mr. Schatz's evaluation because Mr. Gezelius had not worked directly with Mr. Robinson. Dkt. 20 at 3. Mr. Schatz rated Mr. Robinson's skills with ColdFusion and XML as zero because Mr. Robinson had not completed any projects for the County using those technologies. *Id.* at 3-4. Mr. Schatz rated Mr. Robinson's skills with PowerBuilder as zero because Mr. Schatz did not believe that Mr. Robinson had completed any PowerBuilder work of significance, meaning that the work required the independent writing of complex PowerBuilder code. Dkt. 23 at 4. Mr. Schatz did not consider Mr. Robinson's Sybase skills innovative because Mr. Robinson tended to copy from existing programs, and because Mr. Robinson's interface work for the POPS/AP project was not completed in a timely manner and was deemed insufficient. Dkt. 23 at 4. The team leads' evaluations were entered into a spreadsheet in which Mr. Robinson, due to his scores, was ranked last. Dkt. 20, Exh. A at 5. Mr. Schatz's total score for Mr. Robinson was one. Dkt. 23 at 4.

At least one employee, Christine Fitzer, did not approve of the matrix's assessment of her skills and complained to Mr. Schatz. Dkt. 31 at 1. Mr. Schatz told Ms. Fitzer that the purpose of the matrix was "to get someone else to the bottom." Dkt. 31 at 2. Ms. Fitzer was thirty-four years old at the time. Dkt. 19, Exh. A t 3.

On July 22, 2004, Mr. Robinson was informed that he was being laid off effective August 20, 2004, because funding for his position had been eliminated. Dkt. 1 at 15. He was forty-six years old at the time. Dkt. 19 at 3. After being terminated, Mr. Robinson secured a temporary, and later permanent, position with the County in the Public Works and Utilities Department. *Id.* at 14; Dkt. 24 at 1. This new position does not entail programming or the creation of software programs. Dkt. 24 at 2.

## II. PROCEDURAL BACKGROUND

This matter was removed to federal court on June 26, 2006. Plaintiff Bruce Robinson filed suit in Thurston County Superior Court bringing claims for disparate treatment and wrongful termination on the basis of age, hostile work environment, wrongful discharge under the public policy exception to the at-will doctrine, violation of civil liberties (equal protection, due process), negligent supervision, outrage, negligent infliction of emotional distress, and civil conspiracy. Dkt. 1 at 6-10.

Mr. Robinson alleges that the reasons offered for his termination were mere pretext for age discrimination. Specifically, Mr. Robinson contends that the matrix used to assess ITS2 employees considered for termination was biased against older employees. Defendants move for summary judgment seeking dismissal of all of Plaintiff's claims. Dkt. 18.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a

matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### IV. DISCUSSION

**A.    MOTION TO STRIKE**

As a threshold matter, Defendants move to strike several materials submitted by Mr. Robinson in support of his opposition. *See* Fed. R. Civ. P. 56(e)(1) (requiring

ORDER - 6

supporting and opposing affidavits to "set out facts that would be admissible in evidence" at trial).

First, Defendants move to strike Exhibit G, which appears to be an email written by Neil Blindheim and sent to Mr. Gezelius. Dkt. 32 at 7. The email contains a statement, apparently made by Joe Crumpton, regarding favoritism towards younger employees with respect to training opportunities. Dkt. 29-2, Exh. G at 23. Mr. Crumpton's statement constitutes inadmissable hearsay. In addition, the email postdates Mr. Robinson's termination. As to Exhibit G, the motion to strike is granted.

Second, Defendants move to strike Exhibit H, which professes to be a document authored by Ron Scrivener to be attached to his exit interview form. Dkt. 29-2, Exh. H at 24-26. This document is unsigned and unauthenticated, and the motion to strike is granted.

Third, Defendants move to strike portions of Mr. Robinson's declaration and response that are based on Exhibits G and H. Dkt. 32 at 8. The motion to strike Mr. Robinson's restatements of exhibits stricken for purposes of the summary judgment motion (Dkt. 28 at 4-5; Dkt. 29 at 7) is granted.

**B.    AGE DISCRIMINATION**

Plaintiff contends that he was not considered for positions, was terminated, and was not hired for subsequent positions on the basis of his age and in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* Dkt. 1 at 6-7.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. The WLAD similarly prohibits age discrimination with regard to the right to obtain and hold employment. RCW 49.60.180; *see* RCW 49.60.030.

1    Age discrimination claims under the ADEA or the WLAD are analyzed under the

2  *McDonnell Douglas* burden-shifting analysis, and Washington courts look to federal

3  courts for interpretation. *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 745 (9th Cir. 2003);

4  *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2001), *abrogated on other grounds by*

5  *McClarty v. Totem Elec.*, 157 Wn.2d 214 (2006).

6    The analysis has three components. First, the plaintiff must present a prima facie

7  case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If

8  the plaintiff succeeds in presenting a prima facie case, there is a rebuttable presumption of

9  discrimination, and the burden of production shifts to the employer to produce a

10  legitimate reason for the adverse employment action. *Id.*  If the defendant is able to do so,

11  the defendant is entitled to judgment as a matter of law unless the plaintiff's showing

12  creates a genuine issue of material fact to demonstrate that the reason produced is pretext

13  for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804.

14    The ultimate burden of persuading the trier of fact that the employer intentionally

15  discriminated remains with the plaintiff. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271,

16  1281 (9th Cir. 2000). Even though the plaintiff must prove each element of the

17  *McDonnell Douglas* test, the requisite degree of proof required to establish a prima facie

18  case is "minimal and does not even need to rise to the level of a preponderance of

19  evidence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

20  **1. Layoff**

21    Plaintiff contends that his termination was based upon age discrimination and that

22  the proffered reason, Mr. Robinson's lack of skills in the requisite areas, was mere

23  pretext.

24  **(a)    Prima Facie Case**

25    To establish a prima facie case of discharge on the basis of age using

26  circumstantial evidence, plaintiffs must demonstrate that they were (1) members of the

27  protected class (at least forty years of age); (2) performing their jobs satisfactorily; (3)

28

1  discharged; and (4) replaced by substantially younger employees with equal or inferior

2  qualifications. *Coleman*, 232 F.3d at 1281; *Grimwood v. University of Puget Sound, Inc.*,

3  110 Wn.2d 355, 362 (1988).

4      If the contested discharge results from a general reduction in workforce, plaintiffs

5  need not show that they were replaced. *Coleman*, 232 F.3d at 1281. Instead, the burden is

6  to demonstrate, through circumstantial or direct evidence, that the circumstances of the

7  discharge give rise to an inference of age discrimination. *Id.* Such inference can be

8  established with evidence that the employer had a continuing need for the discharged

9  employees' skills because the discharged employees' duties were still being performed or

10  with evidence that employees outside of the protected class were treated more favorably.

11  *Id.*

12      For purposes of the summary judgment motion, Defendants contest only the fourth

13  element. Dkt. 18 at 15. Specifically, Defendants contend that Mr. Robinson's job was

14  eliminated because it was no longer necessary and that no one was hired to replace Mr.

15  Robinson. *Id.*; Dkt. 21 at 3. In his response and complaint, Mr. Robinson does not allege

16  that he was replaced.

17      First, Defendants contend that the County did not have a continuing need for Mr.

18  Robinson's skills and services because the County had no plans to develop new

19  mainframe-based applications. *Id.* Mr. Robinson contends that the mainframe computer

20  remains integral to the County: "The County's Financial Systems, Chart of Accounts,

21  Human Resources Systems, and Payroll, among others, are processed and data-stored on

22  mainframe systems and databases. . . . [T]hese mission critical applications are on the

23  mainframe." Dkt. 1 at 14. Even taking Mr. Robinson's factual allegations regarding the

24  mainframe computer as true, Mr. Robinson fails to refute the County's contention that

25  there were no plans to develop additional mainframe-based applications and that the

26  County was shifting focus away from the mainframe computer. Mr. Robinson therefore

27

28

ORDER - 9

fails to create a genuine issue of material fact as to whether the County had a continuing need for his services.

Second, Defendants contend that Plaintiff offers no evidence that similarly situated employees under the age of forty were treated more favorably with regard to the layoff decision. Dkt. 18 at 15. In this regard, the Court notes that Mr. Robinson does not contend that the ratings of employees under forty years of age were inflated. *See* Dkt. 25, Exh. A at 12 (Plaintiff believes thirty-four-year-old employee's skills were underrated.), at 20 (Plaintiff admits that thirty-two- and thirty-four-year-old employees' skills exceeded his.).

In his deposition, Mr. Robinson testified about how he would have rated himself on the matrix used by Defendants to make the layoff decision. Plaintiff would have rated his ColdFusion skills at one, would have rated his PowerBuilder skills at one point five, and would have rated his Sybase skills at two. Dkt. 25, Exh. A at 11-12, 19. Under his own rating scheme, Mr. Robinson would have ranked eighth instead of last. Again, using Plaintiff's own ratings, all of the individuals ranked lower than Mr. Robinson would have been older, not younger, than Mr. Robinson, with the exception of Bart Eidson. Conversely, all of the individuals outside of Mr. Robinson's protected class still would have been ranked higher than him. Mr. Robinson believes that Terry Genz, who is older than Mr. Robinson, should have been laid off. Dkt. 25, Exh. A at 21. In fact, Mr. Robinson admitted that the only individuals who are not in his protected class and were considered in the layoff decision had skills superior to his own. *See* Dkt. 25, Exh. A at 12, 20. The matrix involves only a small sample of employees and does not reveal any patterns related to age. Plaintiff's factual contentions thus fail to support the view that individuals outside of Mr. Robinson's protected class were treated more favorably in the County's matrix.

Mr. Robinson contends that even though the younger individuals were properly rated more favorably in the County's matrix, the matrix itself was designed to

disadvantage older employees. Dkt. 28 at 6-7. The evidence offered by Mr. Robinson on this point fails to create a genuine issue of material fact for trial.

Mr. Robinson contends that the employees ranked lowest were also the oldest, with one exception. Dkt. 28 at 7. The evidence does not support this contention. Of all of the ITS2 employees under consideration, only three were outside of the protected class. Those individuals ranked first, second, and seventh. Of the individuals ranked higher than Mr. Robinson, five were older than he was. The distribution of employees' ages does not support an inference, beyond mere speculation, of age discrimination.

Mr. Robinson also contends that the criteria assessed in the matrix do not encompass all of his skills. Dkt. 28 at 6. While Mr. Robinson contends that a matrix including different criteria would more accurately reflect his skills, he does not demonstrate that such a matrix would more accurately reflect the County's needs. The purpose of the matrix was not to cast Mr. Robinson in the most favorable light; rather, the purpose was to assess candidates on the basis of skills deemed necessary to the County. Mr. Gezelius determined that 85% of the County's software development work required skills in ColdFusion, PowerBuilder, Sybase, and XML. Dkt. 20 at 3. These are the skills assessed by the matrix, and Mr. Robinson fails to refute Mr. Gezelius's determination that these criteria reflected 85% of the County's needs.

Finally, Mr. Robinson offers the declaration of Ms. Fitzer, who was outside of Mr. Robinson's protected class and ranked higher than Mr. Robinson by both the County and by Mr. Robinson's ratings of himself. Ms. Fitzer contends she was disappointed by her rating in the matrix and that she complained to Mr. Schatz and was told that the purpose of the list was "to get someone else to the bottom." Dkt. 31 at 2. Taken in the light most favorable to Plaintiff, this comment demonstrates that the list was orchestrated to target Mr. Robinson but does not demonstrate that the purpose of such targeting was age discrimination. Ms. Fitzer's statement that she disagreed with the inclusion of XML on the matrix because it is an easily learned data collection method rather than

programming language similarly fails to create an inference that the purpose of the matrix was to discriminate on the basis of age. Dkt. 31 at 1. This is particularly true because the majority of the employees were given XML scores of zero, and the employee with the highest XML score was older than Plaintiff.

**(b)    Legitimate Reason for the Adverse Employment Action and Pretext**

Even if the Court were not convinced that Plaintiff has failed to present a prima facie case, the Court nevertheless concludes that Defendants' proffered reason for Mr. Robinson's termination, his low rating on the matrix, is sufficient to meet the Defendants' burden of production and that Plaintiff fails to create a genuine issue of material fact as to pretext. Plaintiff's belief that the matrix was manipulated to prevent the termination of Terry Genz, who is both within Plaintiff's protected class and older than Plaintiff, does not rise beyond the level of speculation and conjecture and is insufficient to withstand a motion for summary judgment. *See* Dkt. 25, Exh. A at 27.

**2.    Failure to Hire/Rehire**

Plaintiff contends that he was not hired for four positions he sought and that the basis for the County's failure to hire him was age discrimination.

**(a)    Prima Facie Case**

To establish a prima facie case of failure to hire on the basis of age under the ADEA, plaintiffs must demonstrate that they were within the protected class of individuals, that they applied for a position for which they were qualified, and that a younger person with similar qualifications was hired for the position. *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987). The analysis under the WLAD differs only with respect to the third element, which instead requires that the position went to a significantly younger person. *See Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wn. App. 438, 446 n.4 (2005). For purposes of the summary judgment motion, only the third element is in dispute, and Defendants concede that Mr. Robinson has presented a prima

facie case under the WLAD with respect to all employees except Ms. Wang, who was forty-five at the time she was hired. Dkt. 18 at 17.

Specifically, Defendants contend that Mr. Robinson's qualifications are not similar to any of the younger applicants who were hired. *Id.* at 18. Tony Trinidad had more than three years of experience in PowerBuilder and Sybase and more than two years of experience working with ColdFusion. Dkt. 20 at 2. Craig Colburn had more than five years of experience with technologies similar to PowerBuilder and Sybase. Dkt. 23 at 5. Mr. Colburn also had three years of experience with technologies similar to JAVA and ColdFusion and had ColdFusion experience. *Id.* Finally, Mr. Colburn had three years of experience in XML. *Id.* Jonathan Kamke had three years of experience in PowerBuilder, ColdFusion, and Sybase and had some XML experience. Dkt. 23 at 5. David Turner had two years of experience in PowerBuilder, ColdFusion, Sybase, and XML. Dkt. 23 at 6. Nate Moore had eight years of experience in JAVA and more than seven years of experience in databases similar to Sybase. Dkt. 23 at 6. Jesse Wang was hired because she had more than seven years of experience in Sybase and was a certified JAVA Programmer. Dkt. 23 at 6. In response to the motion, Mr. Robinson fails to compare his skills to those of the younger applicants or to demonstrate that he was more, or equally, qualified. In the absence of such evidence, Plaintiff fails to present a prima facie case.

**(b)      Legitimate Reason for the Adverse Employment Action**

Even if Mr. Robinson could present a prima facie case of discrimination under both the ADEA and the WLAD, Defendants have satisfied their burden of production because they contend that the younger applicants were selected because their relevant qualifications exceeded Mr. Robinson's qualifications. *See* Dkt. 20 at 2; Dkt. 23 at 5-7.

**(c)      Pretext**

To demonstrate pretext indirectly, plaintiffs must offer evidence that the proffered reason for the employment decision is not worthy of belief. *Kuyper v. State*, 79 Wn. App. 732, 738 (1995). To show that the employer's justification is unworthy of belief, plaintiffs

may show that the justification has no basis in fact, that the justification was not actually

a motivating factor behind the employment decision, that the justification lacks sufficient

temporal proximity to the employment decision, or that the justification was not a

motivating factor in employment decisions regarding other employees in the same

circumstances. *Id.* at 738-39; *see Cotton*, 812 F.2d at 1249.

In this case, Mr. Robinson fails to create a genuine issue of material fact as to

whether the County's proffered reason for hiring other candidates is worthy of belief. In

other words, Mr. Robinson fails to offer evidence disputing that the hired candidates'

qualifications exceeded his. Mr. Robinson's contention that other criteria could have been

used and would have been more favorable to him is insufficient to meet his burden. At

most, this contention demonstrates that the County *could* have hired him. Employers are

free to hire qualified candidates, and the decision to hire a qualified candidate who

happens to be younger does not necessarily evidence discrimination. *Kuyper*, 79 Wn.

App. at 738. Even if the County's employment decisions would have been better if based

on other criteria, such a contention does not evince unlawful discrimination. *See Cotton*,

812 F.2d at 1249 ("The ADEA does not make it unlawful for an employer to do a poor

job of selecting employees. It merely makes it unlawful to discriminate on the basis of

age.").

### 3.    Hostile Work Environment

Plaintiff contends that the work environment at the County was characterized by

hostility towards older employees.

The elements of a hostile work environment claim under RCW 49.60.180(3) are

offensive contact that is unwelcome, that occurs because of age, that affects the terms or

conditions of employment, and that can be imputed to the employer. *See Washington v.

Boeing Co.*, 105 Wn. App. 1, 10 (2000). *See also* 29 U.S.C. § 623(a) (creating cause of

action where employee is discriminated against "because of" age); *Sischo-Nownejad v.

Merced Community College Dist.*, 934 F.2d 1104, 1009 (9th Cir. 1991) (noting existence

of hostile work environment claim under the ADEA and that "[a] hostile work environment requires the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class."), *abrogated on other grounds by statute as stated in Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005). To determine whether the conduct affected the terms or conditions of employment, courts look for conduct that is frequent, severe and pervasive, and physically threatening or humiliating rather than merely offensive. *Id.* "Casual, isolated, or trivial manifestations of a discriminatory environment" are insufficient. *Id.* In the Title VII context, the Supreme Court has recognized that employees cannot demonstrate any effect on the terms or conditions of employment absent evidence that they actually perceived the working environment to be hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 753 (1998).

In this case, Mr. Robinson did not form the subjective belief that the working environment was hostile to older County employees until after he was laid off. Mr. Robinson was asked during his exit interview whether he felt that he had been discriminated against on the basis of age, and he responded that he did not. Dkt. 25, Exh. A at 25. Mr. Robinson asserts that this response was based upon knowledge that he had at the time of his interview and that he would have answered differently if he had been asked the question after he learned about the skills matrix. *Id.* The skills matrix alone does not demonstrate offensive and unwelcome contact sufficient to raise a genuine issue of material fact as to whether the working environment was hostile.

Mr. Robinson's primary means of demonstrating that the working environment was hostile is through the presentation of Exhibits G and H, which have been stricken. In an abundance of caution and the interest of fairness to Plaintiff, the Court has nevertheless considered the stricken evidence and finds it insufficient to create a genuine issue of material fact. First, Mr. Scrivener's statements are vague and do not demonstrate

that any hostility was due to age. Instead, Mr. Scrivener describes a working environment that favors "high tech" employees and "technological advancement." Dkt. 29-2, Exh. H at 24-25. In addition, the document was apparently drafted years after Mr. Robinson was terminated. Second, the email referencing Mr. Crumpton's statement that there was favoritism towards younger employees also postdates Mr. Robinson's termination by almost two years. In addition, Mr. Robinson does not appear to base his claims on denied training opportunities and does not appear to allege that he was denied JAVA training in favor of younger employees. The Court therefore concludes that summary judgment on Mr. Robinson's hostile work environment claim is proper.

## C.   WRONGFUL DISCHARGE

Plaintiff contends that he was wrongfully discharged in violation of the public policy exception to the at-will employment doctrine. Dkt. 1 at 7.

Washington generally adheres to the at-will employment doctrine, under which "an employer has the right to discharge an employee, with or without cause, in the absence of a contract for a specified period of time." *Snyder v. Medical Service Corp. of Eastern Washington,* 145 Wn.2d 233,238 (2001). If an employee's discharge violates a "clear mandate of public policy," Washington courts recognize an exception to the at-will doctrine. *Id.* This exception is narrow, however, and requires plaintiffs to identify a stated public policy that is legislatively or judicially recognized. *Id.* at 239. Mr. Robinson fails to address this portion of the response with specificity, and summary judgment on Plaintiff's wrongful discharge claim is proper.

## D.   42 U.S.C. § 1983

Mr. Robinson contends that Defendants violated his rights to equal protection and due process of law in violation of the Fourteenth Amendment. Dkt. 1 at 8.

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. §

1983, plaintiffs must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985). In addition, plaintiffs must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

As a threshold matter, the Court notes that Mr. Robinson's inability to withstand summary judgment on his ADEA claim would generally warrant summary judgment on his Section 1983 claim. *See Sischo-Nownejad*, 934 F.2d at 1112 ("A plaintiff who fails to establish intentional discrimination for purposes of Title VII and the Age Discrimination in Employment Act also fails to establish intentional discrimination for purposes of § 1983.").

Defendants contend that summary judgment on Mr. Robinson's Section 1983 claims is proper because none of the alleged conduct was taken "under color of state law." Dkt. 18 at 21. With respect to Plaintiff's equal protection claim, Defendants contend that Mr. Robinson cannot maintain suit against the government as a "class-of-one." Finally, Defendants contend that Mr. Robinson's due process claim should be dismissed because it is not sufficiently extreme.

First, Defendants allege that Mr. Robinson cannot create a genuine issue of material fact as to whether the alleged conduct was "under color of state law." Dkt. 18 at 21. As a general rule, public employees act under state law if they are acting in their official capacity or while exercising responsibilities conferred by state law. *West v.*

*Atkins*, 487 U.S. 42, 50 (1988). Defendants do not demonstrate that the individual plaintiffs were acting outside of their official capacities.

Second, Defendants contend that Mr. Robinson's equal protection claim is based upon a theory recently rejected by the Ninth Circuit. *See Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985 (9th Cir. 2007), *cert. granted*, 2008 WL 109700, No. 07-474 (2008). In *Engquist*, the Ninth Circuit reviewed the varying approaches to equal protection claims in which the allegedly discriminated class consists of one public employee and held that "the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees." *Engquist*, 478 F.3d at 996. Under this authority, summary judgment on Plaintiff's equal protection claim is proper.

Finally, Defendants contend that Mr. Robinson's claim is not sufficiently extreme to constitute a due process violation under *Engquist*. *See Engquist*, 478 F.3d at 996-97 (noting that "most courts have rejected the claim that substantive due process protects the right to a particular public employment position" and recognizing a substantive due process claim for a public employer's violations of occupational liberty limited to extreme cases, such as blacklisting); Dkt. 28 at 7 ("Mr. Robinson would proffer that a clearly age-discriminate policy, implemented through a pretextual biased skills matrix, is extreme."). Taken in the light most favorable to Plaintiff, allegations regarding the skills matrix do not rise to the level of extremity required under *Engquist*, and summary judgment on Plaintiff's due process claim is therefore proper.

## E.   NEGLIGENT SUPERVISION

Mr. Robinson contends that Messrs. Gezelius and Schatz were negligently supervised because they were able to commit acts of negligent or intentional wrongdoing. Dkt. 1 at 9. As a threshold matter, the Court declines to dismiss Mr. Robinson's negligent supervision claim merely because it relies on the same factual allegations as his discrimination claims. In *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 866

(2000), the court held that issues of material fact precluded summary judgment on the plaintiffs' harassment claim but that summary judgment on the negligent supervision claim was proper. *Francom*, 98 Wn. App. at 866. With little discussion, the Court noted that the law forbids double recovery for the same injuries and dismissed the claim as duplicative. To the extent that Mr. Robinson's negligent supervision claim is similar to his discrimination claim, the Court is not persuaded that the negligent supervision claim can fairly be termed "duplicative" of a dismissed claim.

Defendants also advance a similar but different theory warranting dismissal of Plaintiff's negligent supervision claim. Mr. Robinson contends that Messrs. Gezelius and Schatz were negligently supervised because they committed age-based discrimination. Because Plaintiff's discrimination claims are subject to summary judgment, Plaintiff cannot maintain a negligent supervision claim based upon the success of those claims. *See Herried v. Pierce County Public Transp. Ben. Authority Corp.*, 90 Wn. App. 468, 478 (1998) ("Since Herried has not produced proof that she was the subject of gender-based discrimination, she cannot claim that Pierce Transit was negligent in supervising an employee who allegedly discriminated."). Defendants' motion is therefore granted as to Plaintiff's negligent supervision claim.

## F.    OUTRAGE

Outrage requires proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975). Whether the conduct is sufficiently outrageous is ordinarily a question for the jury, but courts must initially determine if reasonable minds could differ as to whether the conduct was sufficiently extreme to result in liability. *Phillips v. Hardwick*, 29 Wn. App. 382, 387

1
2
3
4

(1981). Again, the ability of Mr. Robinson's claims to withstand summary judgment is hampered by his cursory response. Because Mr. Robinson alleges no conduct sufficiently extreme, outrageous, atrocious, or utterly intolerable, reasonable minds could not differ as to Defendants' liability for outrage. Summary judgment on this claim is proper.

5

## G.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

6
7
8
9

In Washington, the tort of negligent infliction of emotional distress requires a showing that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach is a proximate cause of damages, and (4) damages did indeed result. *Snyder*, 145 Wn.2d at 243.

10
11
12
13

Whether there is a duty owed is a question of law that "depends on mixed considerations of 'logic, common sense, justice, policy, and precedent.'" *Keates v. Vancouver*, 73 Wn. App. 257, 265 (1994). In the employment context, employers are under no duty to provide a workplace free of stress. *Snyder*, 145 W.2d at 243.

14
15
16
17
18
19
20
21
22
23
24

The Washington Supreme Court recognizes that some wrongful acts do not result in legal liability and that "mental distress is a fact of life." *Hunsley v. Giard*, 87 Wn.2d 424, 435 (1976). Perhaps for this reason, Washington courts have been reluctant to find a duty to act reasonably when responding to disputes. *Bishop v. State*, 77 Wn. App. 228, 234-35 ("Therefore, we hold that absent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes."). Mr. Robinson fails to define the parameters of his negligent infliction of emotional distress claim, specify the damages he suffered, or provide a basis for imposing liability on Defendants. Summary judgment as to Plaintiff's negligent infliction of emotional distress claim is therefore proper.

25

## H.   CIVIL CONSPIRACY

26
27

Mr. Robinson contends that Defendants intentionally conspired together to deprive him of his state and federal rights. Dkt. 1 at 10. Under Washington law, a civil conspiracy

28

ORDER - 20

claim requires "clear, cogent, and convincing evidence" that two or more people entered into an agreement to accomplish an unlawful purpose or to accomplish a lawful purpose via unlawful means. *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 114 Wn. App. 151, 160 (2002). Alleging "[m]ere suspicion or commonality of interests is insufficient." *All Star Gas, Inc., of Washington v. Bechard*, 100 Wn. App. 732, 740 (2000). If the factual allegations are equally consistent with a lawful or honest purpose as with an unlawful purpose, the allegations are insufficient to support a claim of civil conspiracy. *Id.* Mr. Robinson's response fails to address his civil conspiracy claim. *See* Dkt. 28. To the extent that Mr. Robinson alleges that Messrs. Schatz and Gezelius conspired against him with respect to the matrix, the evidence before the Court suggests that Mr. Gezelius was separately responsible for identifying the relevant criteria and had no involvement in evaluating Mr. Robinson. Summary judgment on Mr. Robinson's civil conspiracy claim is therefore proper.

## V. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 18) is **GRANTED**, Plaintiff's claims are **DISMISSED**, and the motion to strike contained in Defendants' reply (Dkt. 32) is **GRANTED**.

DATED this 11th day of February, 2008.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 21